UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDERS TRON-HAUKEBO, | CASE NO. C23-5691JLR |
| Plaintiff, | ORDER |
| v. | |
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court are two motions:  (1) Defendants the Washington State
Department of Transportation ("DOT") and Washington State Ferries' ("WSF", and
together, "Defendants") motion to dismiss and (2) Plaintiff Anders Tron-Haukebo's
motion requesting a ruling.  (MTD (Dkt. # 12); MRR (Dkt. # 13).)  Defendants oppose
Mr. Tron-Haukebo's motion requesting a ruling.  (MRR Resp. (Dkt. # 14).)  Mr.
Tron-Haukebo, who is proceeding *pro se* and *in forma pauperis* ("IFP"), did not respond

1  to Defendants' motion to dismiss.  (*See generally* Dkt.)  Neither party filed a reply.  (*See*

2  *generally id.*)  The court has reviewed the motions, the parties' submissions, the relevant

3  portions of the record, and the governing law.  Being fully advised,[1] the court GRANTS

4  Defendants' motion to dismiss and DENIES Mr. Tron-Haukebo's motion requesting a

5  ruling.

6  ## II.    BACKGROUND

7  This case arises from Mr. Tron-Haukebo's efforts to obtain employment with

8  WSF.  (*See generally* Compl. (Dkt. # 6).)  Mr. Tron-Haukebo lives in Clallam County,

9  Washington; is 77 years old; and has a hearing disability.  (*Id.* at 1, 4-5.)  He alleges that

10  he applied for a position as a WSF terminal attendant and was offered employment

11  beginning on March 28, 2023.  (*Id.* at 2.)  WSF terminal attendants may be given one of

12  two assignments:  ticket seller or traffic guide.  (*Id.* at 3-4 (describing the two roles).)

13  Mr. Tron-Haukebo asserts that he "diligently applied himself to learning and practicing

14  the training activities for becoming a ticket[]seller."  (*Id.* at 5.)

15  Mr. Tron-Haukebo attended orientation and training sessions provided by WSF in

16  Seattle.  (*Id.* at 2.)  On his first day of classes, Mr. Tron-Haukebo asked to be seated in

17  the first row of seats because he has a hearing disability.  (*Id.* at 4.)  He also asked for

18  materials that he could take home to study, but his request was denied.  (*Id.* at 5.)  Mr.

19  Tron-Haukebo asserts that he attended all his classroom training sessions in Seattle, "was

20

21  _____

    [1] No party requests oral argument (*see* MTD at 1; MRR at 1; MRR Resp. at 1) and the

22  court concludes that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1    never told that classes were delayed because of his tardiness," and never received any

2    notice of complaints or reprimands.  (*Id.* at 4.)

3         On or around April 3, 2023, Mr. Tron-Haukebo was told that he did not get a

4    passing score on the classroom portion of the ticket-seller training and that his

5    employment was terminated for that reason.  (*See id.* at 2, 5.)  His request to be

6    reassigned to traffic guide duties was denied.  (*Id.* at 5.)  When he asked if he could be

7    scheduled for the next classroom training session, he was told that he must re-apply for

8    employment before he could attend the training again.  (*Id.* at 5.)

9         Mr. Tron-Haukebo filed his proposed complaint and an application to proceed IFP

10   on July 31, 2023.  (IFP App. (Dkt. # 1).)  On August 16, 2023, the court granted Mr.

11   Tron-Haukebo leave to proceed IFP and docketed his complaint.  (IFP Order (Dkt. # 5);

12   Compl.)  Mr. Tron-Haukebo alleges that Defendants violated the Americans with

13   Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by failing to accommodate his

14   hearing disability.  (Compl. at 5.)  The court also liberally construes his complaint as

15   raising a claim for violation of the Age Discrimination in Employment Act ("ADEA"),

16   29 U.S.C. § 621 *et seq.*  (*See id.* (alleging that "older learners often require adaptive

17   measures to learn material," that Defendants "should have adjusted the manner and mode

18   of [Mr. Tron-Haukebo's] training" due to his "learning style," and that he "is a member

19   of a protected class" "due to his age")); *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th

20   Cir. 1992) (noting that the court must liberally construe a *pro se* litigant's pleadings).

21   Mr. Tron-Haukebo seeks back pay, reinstatement, exemplary damages, and compensation

22   for lost benefits.  (Compl. at 5.)

# III.   ANALYSIS

The court begins by discussing Defendants' motion to dismiss, then considers Mr. Tron-Haukebo's motion requesting a ruling.

## A.   Motion to Dismiss

Defendants urge the court to dismiss this case because Mr. Tron-Haukebo's claims are barred by Eleventh Amendment immunity.  (*See generally* MTD.)  They argue that Washington has not consented to be sued for violations of the ADA and ADEA and that Congress has not abrogated the states' sovereign immunity for such violations.  The court agrees.

The Eleventh Amendment bars a citizen from bringing a suit against their own state in federal court.  *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir. 1995) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).  "Eleventh Amendment immunity extends to state departments, agencies, boards, and commissions, and to state employees acting in their official capacity because a suit against them is regarded as a suit against the State itself." *Planned Parenthood Ariz., Inc. v. Brnovich*, 172 F. Supp. 3d 1075, 1086 (D. Ariz. 2016) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  Accordingly, Defendants—which are Washington state agencies—are arms of the state ordinarily immune from suit in federal court.

A plaintiff can overcome the Eleventh Amendment bar only if the state has consented to waive its immunity or if Congress has abrogated the state's immunity.  *See Micomonaco*, 45 F.3d at 319.  Washington has not consented to waive its Eleventh Amendment immunity to claims brought in federal court.  *See Rains v. State*, 674 P.2d

165, 170 (Wash. 1983) ("[T]he State cannot be sued in federal court because of the Eleventh Amendment."); *see also Minnis v. Washington*, 675 F. App'x 728, 730 (9th Cir. 2017) (affirming grant of summary judgment on ADA claims against state of Washington based on Eleventh Amendment immunity); *Del Castillo v. Wash. Dep't of Soc. & Health Servs.*, No. C05-1122JLR, 2007 WL 2713035, at *4 (W.D. Wash. Sept. 14, 2007) (concluding that Washington has not waived Eleventh Amendment immunity for ADEA claims). And the Supreme Court has made clear that neither Title I of the ADA, which governs employment, nor the ADEA abrogates Eleventh Amendment immunity for claims against a state. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360-61 (2001) (holding that Title I does not abrogate suits for money damages against the states); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 66 (2000) (holding that the ADEA does not validly abrogate the states' Eleventh Amendment immunity).

Thus, because Defendants are immune from suit, the court GRANTS their motion to dismiss and DISMISSES Mr. Tron-Haukebo's claims without prejudice. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (holding that dismissals under the Eleventh Amendment should be without prejudice so that the plaintiff "may reassert his claims in a competent court"); *see also Kimel*, 528 U.S. at 91 ("State employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union."). The court denies leave to amend because no amendment can overcome Defendants' Eleventh Amendment immunity. *See Lucas v. Cal. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (holding that when a court dismisses a *pro se* plaintiff's complaint, it must give the

1    plaintiff leave to amend "[u]nless it is absolutely clear that no amendment can cure the

2    defect" in the complaint).

3    **B.     Motion Requesting a Ruling**

4          In his motion, Mr. Tron-Haukebo states that he "recently read information that

5    'permission' from the [Equal Employment Opportunity Commission ("EEOC")] is

6    necessary prior to filing a lawsuit alleging violation of the ADA" and that he has since

7    attempted to contact the EEOC, to no avail.  (MRR at 1.)  He asks the court, therefore,

8    either to (1) allow this lawsuit to proceed because he has made a "good-faith effort to

9    comply" with his "administrative legal duties," or (2) grant him leave to "file a new

10   action regarding nearly identical information and allegations against the Defendants and

11   consider all requirements to obtain EEOC permission" waived or fulfilled.  (*Id.* at 2.)  As

12   Defendants correctly point out, however, even if there were a legal basis for the court to

13   waive the administrative prerequisites for filing suit, that relief would be futile because

14   the Eleventh Amendment nevertheless bars Mr. Tron-Haukebo from suing them for ADA

15   Title I and ADEA violations in federal court.  (*See* MRR Resp. at 2-4.)  Therefore, the

16   court DENIES Mr. Tron-Haukebo's motion requesting a ruling.

17   //

18   //

19   //

20   //

21   //

22   //

ORDER - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss

(Dkt. # 12) and DENIES Mr. Tron-Haukebo's motion requesting a ruling (Dkt. # 13).

This matter is DISMISSED without prejudice.

Dated this 1st day of November, 2023.

JAMES L. ROBART
United States District Judge

ORDER - 7